UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

KYUNG KUN SONG,

                    Plaintiff,

                v.

DOPERATION, INC., *d/b/a Ju Makk*, *d/b/a Ki-Sa-Sik-Dang*, DOHYUN KIM, MICHELLE, *potentially known as Young Jeong*, SUJIN YI, *a/k/a Jujin Kim, a/k/a Gem Sujin*,

                    Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-1254 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Kyung Kun Song commenced this action on March 5, 2025 against Defendants Doperation, Inc., doing business as Ju Makk, and doing business as Ki-Sa-Sik-Dang ("Doperation"); Dohyun Kim; Michelle, potentially known as Young Jeong, also known as Michelle Sung Hee Son; and Sujin Yi, also known as Gem Sujin, also known as Sujin Kim. (Compl., Docket Entry No. 1.)  Plaintiff alleges that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL"), and the New York Codes, Rules and Regulations, N.Y. Comp. Codes R. & Regs. tit. 12, § 146 ("NYCRR") by failing to: (1) pay minimum wages, (2) pay overtime compensation for hours worked in excess of forty hours per week, (3) maintain accurate time and payroll records, (4) pay spread-of-hours compensation for work days exceeding ten hours, (5) furnish required wage notices and statements, and (6) post or otherwise provide notice of employee rights.  (Compl. ¶¶ 52–95.)

On March 11, 2025, the Clerk of Court referred this case to the Court-Annexed Arbitration Program pursuant to Local Civil Rule 83.7(d).[1] (Not. Designating Case to Arbitration.) On October 10, 2025, the arbitrator issued an award in favor of Plaintiff against Doperation and Dohyun Kim (collectively, "Defendants") in the amount of $87,799.00, plus prejudgment interest from June 1, 2024, and reasonable attorneys' fees and costs ("Award"), which the Clerk of Court entered on November 12, 2025. (J. Arbitration Award, Docket Entry No. 24; *see* Order dated Oct. 10, 2025).

On November 24, 2025, Plaintiff moved to confirm the Award in the full amount of $87,799.00,[2] attorneys' fees in the amount of $68,888.00, costs in the amount of $6,955.25, prejudgment interest in the amount of $11,452.36 (9% per annum on the Award from June 1, 2024 through November 12, 2025), and post-judgment interest pursuant to 28 U.S.C. § 1961 on the entire money judgment from November 12, 2025 until the judgment is satisfied.[3] Defendants

---

[1] Local Civil Rule 83.7(d) requires automatic referrals to arbitration in cases where monetary damages do not exceed $150,000, excluding social security cases, tax matters, prisoners' civil rights cases, and any action based on an alleged violation of a right secured by the Constitution of the United States or if jurisdiction is based in whole or in part on Title 28 U.S.C. § 1343. (*See* Not. Designating Case to Arbitration, Docket Entry No. 7.)

[2] (Pl.'s Notice of Mot. for Attorneys' Fees and Mem. in Supp. of Pl.'s Mot ("Pl.'s Mem."), Docket Entry No. 25; Decl. of Michael H. Ryu ("Ryu Decl."), appended to Pl.'s Mem., Docket Entry No. 25-1; Defs.' Mem. in Opp'n to Pl.'s Mot. ("Defs.' Opp'n"), Docket Entry No. 27; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), Docket Entry No. 28.)

[3] Plaintiff also moves for relief pursuant to NYLL § 198(4), (Pl.'s Mem. 2), which states that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-05418, 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024), *report and recommendation adopted*, 2024 WL 2891798 (E.D.N.Y. June 10, 2024). The increase applies only to Plaintiff's damages awarded under the NYLL.

oppose Plaintiff's motion for attorneys' fees in the amount of $68,799.00 but do not oppose the other forms of relief requested by Plaintiff. (Defs.' Opp'n 2.)[4]

For the reasons explained below, the Court awards prejudgment interest in the amount of $11,452.36 and post-judgment interest and grants Plaintiff's motion for attorneys' fees and costs in the amounts of $40,835.00 and $6,955.25, respectively.

## I.   Background

### a.   The parties

Plaintiff is a former employee of Doperation and resides in Queens, New York. (Compl. ¶ 1.) Doperation is a New York corporation "operating a restaurant" with its place of business in Flushing, New York. (*Id.* ¶ 6.) Plaintiff alleged that Defendants Kim, Sung Hee Son, and Yi were owners, supervisors, and managers of the restaurant. (*Id.* ¶¶ 7–9.) In addition, Plaintiff alleges that all Defendants "set Plaintiff's work schedule," "set Plaintiff's pay," "interviewed Plaintiff for hiring," "participated in and approved of the pay practices of the restaurant," "managed, supervised, established, administered or exercised authority over the terms and conditions of Plaintiff's employment," "assigned work or participated in assigning work," and "had the power and authority to discipline Plaintiff." [5] (*Id.* ¶¶ 41–44.)

---

*Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053, 2023 WL 9603828, at \*16 n.13 (E.D.N.Y. Dec. 27, 2023) ("The increase applies only to damages awarded under state law.").

[4] Because the parties' motion papers are not paginated, (*see generally* Pl.'s Mem., Defs.' Opp'n, Pl.'s Reply), the Court refers to the page numbers assigned by the electronic case filing system.

[5] Plaintiff alleges that Defendants were engaged in interstate commerce, including by purchasing and using goods imported from outside New York and operating a business with annual gross revenue exceeding $500,000. (Compl. ¶¶ 29–36, 40.)

### b.  Plaintiff's allegations in the Complaint

Plaintiff was employed as a cook at Doperation from approximately January 2, 2024 through September 22, 2024.  (*Id.* ¶¶ 12–13.)  First, Plaintiff alleges that he worked "5 days a week minimum 12 hours per day all throughout his employment," totaling "at least sixty hours per each work week," including "40 hours of regular hours and 20 hours exceeding 40 hours per work week."  (*Id.* ¶ 14.)  Second, Plaintiff alleges that he was a "non-exempt employee" within the meaning of the FLSA and NYLL.  (*Id.* ¶ 50.)

With respect to compensation, Plaintiff alleges that his pay varied over the course of his employment.  (*Id.* ¶¶ 16–26.)  For an initial period from January 2, 2024 through approximately March 19, 2024, Defendants "refused to pay Plaintiff $300 per day," instead telling him "that they would pay $5,000 for the entire period," but "did not even pay that at all."  (*Id.* ¶ 17.)  Plaintiff further alleges that Defendants "did not pay even the principal of the weekly pay of $9,700" during this period.[6]  (*Id.* ¶ 21.)  From approximately January 2, 2024 through July of 2024, Plaintiff alleges that he was paid a flat weekly wage of $1,500.  (*Id.* ¶ 20.)  Beginning in or about August of 2024 and continuing through the end of his employment on September 22, 2024, Plaintiff alleges that Defendants reduced his compensation to $250 per day, or approximately $1,250 per week.  (*Id.* ¶¶ 19–20, 26.)  Plaintiff alleges that these payments did not include proper overtime compensation for hours worked in excess of forty hours per week and that his compensation fell below the applicable minimum wage.  (*Id.* ¶¶ 25–28, 51.)

---

[6] Plaintiff does not clearly specify the period of work for which he is owed $9,700.  (*See* Compl. ¶ 21 (no specific dates); *cf. id.* ¶ 27 ("As to the unpaid $9,700 for the period from March 20, 2024–September 22, 2024, that is considered unpaid regular hours.").)  Because the Court confirms the arbitration award without objection, *infra*, the specific dates are immaterial to the Court's analysis.

Plaintiff further alleges that he "worked more than 10 hours per day for five days each work week" and is therefore entitled to spread-of-hours pay. (*Id.* ¶¶ 14–15, 78–82.) In addition, Plaintiff alleges that Defendants "knowingly and willfully failed to keep full and accurate records of Plaintiff's hours and wages," "failed to maintain proper timekeeping and compensation records," and failed to provide required wage notices and statements during his employment. (*Id.* ¶¶ 52–55.)

In the Complaint, Plaintiff seeks total damages amount of $99,925.00 for unpaid regular wages, overtime wages, and corresponding liquidated damages; $5,000 for the violation of NYLL § 195(1); $5,000 for the violation of NYLL § 195(3); $2,960 for the violation of spread of hours and corresponding liquidated damages; prejudgment and post-judgment interest; and attorneys' fees and costs. (*Id.* at 14–15.)

c. **Arbitration**

On June 5, 2025, the court scheduled an arbitration hearing for October 3, 2025,[7] (Not. of Arbitration Hearing Scheduled, Docket Entry No. 14), and appointed arbitrator Sara Kula on September 22, 2025, (Order Appointing Arbitrator, Docket Entry No. 17). The arbitrator held an arbitration hearing on October 3, 2025. (J. Arbitration Award.) The arbitrator issued an Award in favor Plaintiff against Defendants Doperation and Kim and dismissed Plaintiff's claims on the merits against Defendants Sung Hee Son and Yi. (*Id.*) The parties failed to file a Demand/Request for Trial De Novo within thirty days, and the Clerk of Court entered the Award

---

[7] Prior to the referral to arbitration, the Honorable Magistrate Judge Peggy Kuo ordered the parties to submit a discovery plan and engage in early settlement discussions. (Order dated March 10, 2025.) The parties filed a letter on June 9, 2025 seeking guidance on the discovery scheduling orders, (Mot. for Discovery, Docket Entry No. 15), and submitted a joint discovery plan on June 18, 2025, (Joint Rule 26(f) Conference Report and Discovery Plan Agreement, Docket Entry No. 16). Judge Kuo vacated the discovery scheduling order and directed the parties to comply with the arbitration orders instead. (Order dated June 9, 2025.)

as judgment on November 12, 2025.  (*Id.*)  Plaintiff moves to confirm the Award and for

prejudgment interest, attorneys' fees, and costs, in accordance with the Award.

## II.  Discussion

### a.  The arbitration Award was entered as a final judgment

Plaintiff requests that the Court "[c]onfirm[] and finaliz[e] the judgment on the arbitration

award in the principal amount of $87,799.00," and enter an award of prejudgment interest,

attorneys' fees, and costs.  (Pl.'s Mem. 1, 7; *see* J. Arbitration Award.)  Defendants do not

oppose confirmation of the judgment amount, prejudgment interest, and costs, but Defendants

object to Plaintiff's requested amount of attorneys' fees.  (Defs.' Opp'n 2.)  However, no further

order of the Court is necessary in order to give legal effect to the Award that the Clerk of Court

entered on November 12, 2025.  In addition, Defendants do not oppose the arbitration Award,

only the amount of attorneys' fees requested.  Local Civil Rule 83.7(g)(1) provides in relevant

part:

> The arbitration award must be filed with the court promptly after
> the hearing is concluded and shall be entered as the judgment of
> the court after the 30-day period for requesting a trial *de novo*
> pursuant to section (h) has expired, unless a party has demanded
> a trial *de novo*.  The judgment so entered will be subject to the
> same provisions of law and will have the same force and effect
> as a judgment of the court in a civil action, except that it shall not
> be appealable.

Local Civ. R. 83.7(g)(1).  Consistent with this rule, since no party requested a trial *de novo*, the

Clerk of Court entered the Award as "judgment of the Court."  *See Nicaisse v. Mel S. Harris &*

*Assocs., LLC*, No. 14-CV-1569, 2015 WL 5561296, at *2 (E.D.N.Y. Sep. 19, 2015) (finding the

arbitrator's award became the final judgment of the court thirty days after it was filed on the

public docket under Local Civil Rule 83.7 and stating that the plaintiff did not need to move to

confirm the arbitration award because "no further order of this [c]ourt is required in order to give

6

legal effect to the arbitration award.").  Accordingly, the Clerk of Court has already confirmed the Award in the amount of $87.799.00.  (*See* J. Arbitration Award.)  Pursuant to the arbitration Award dismissing the claims on the merits against Sung Hee Son and Yi, the Court directs the Clerk of Court to dismiss the claims on the merits against Sung Hee Son and Yi.  (*Id.*)  Other than the amount of attorneys' fees requested by Plaintiff, Defendants do not object to the arbitration Award, including the awards of the judgment amount, prejudgment interest from June 1, 2024, and reasonable costs.  (Defs.' Opp'n 2.)

> **b. Plaintiff seeks prejudgment interest in the amount of $11,452.36, attorneys' fees in the amount of $40,835.00, and costs in the amount of $6,955.25**

> **1. Prejudgment interest**

Section 198(1-a) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practices and rules."  *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (providing that the NYLL liquidated damages provision permits employees to recover "prejudgment interest as required under the civil practice law and rules").  The applicable interest rate is 9% per annum.  *See Ramirez v. Lin*, 830 F. App'x 672, 673 (2d Cir. 2020) (affirming the district court's application of a 9% interest rate to prejudgment interest under the NYLL (citing *Ramirez v. Roka Japanese Food*, No. 18-CV-296, 2019 WL 2372866, at *10 (E.D.N.Y. June 5, 2019))); *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213, at * 4 (E.D.N.Y. Sep. 25, 2023) ("The NYLL provides for an award of pre-judgment interest in addition to liquidated damages, calculated at 9% per year." (citations omitted)); *Tarax v. Blossom W. Inc.*, No. 19-CV-6228, 2022 WL 2132749, at *4 (S.D.N.Y. June 14, 2022) ("Pursuant to New York state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." (citation omitted)).  "Interest shall be computed from the earliest ascertainable date the cause of action existed," or "[w]here such damages were

incurred at various times, interest shall be computed upon each such item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); *see Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020) (citing N.Y. C.P.L.R. §§ 5001(b), 5004).

The arbitrator awarded prejudgment interest from June 1, 2024.  (J. Arbitration Award.) Plaintiff moves for prejudgment interest at 9% per annum from June 1, 2024, until the date of the entry of the Award as judgment, November 12, 2025, in the amount of $11,452.36, (Pl.'s Mem. 1), and Defendants do not oppose the request, (Defs.' Opp'n 2).  Plaintiff is entitled to prejudgment interest on the Award judgment amount of $87,799.00 from June 1, 2024 until the date judgment is entered, November 12, 2025, a total of 529 days, at a rate of approximately $21.65 per day[8] for a total of $11,452.36.  The Court therefore confirms and awards the prejudgment amount requested by Plaintiff in the amount of $11,452.36 without objection from Defendants.

### 2. Attorneys' fees

Plaintiff requests that the Court award $68,888.00 total in attorneys' and paralegal fees representing 138.00 hours of work.  (Pl.'s Mem. 2, 4.)  In support, Plaintiff submits several documents: (1) a written Representation Agreement with undersigned counsel establishing an hourly-rate schedule, including $560 per hour for attorney Michael Hyunkweon Ryu and $220 per hour for paralegal Cathy Kim, (Representation Agreement, annexed to Pl.'s Mem. as Ex. 3, Docket Entry No. 25-4; *see also* Pl.'s Mem. 4); (2) a billing summary with detailed entries reflecting total attorneys' and paralegal fees of $68,888.00 for 138.00 hours ("Billing

---

[8] The Court calculates the prejudgment interest rate as follows: ([$87,799.00 from the Award] × [9% interest / 365 days]).

Summary"), (Billing Summary, annexed to Pl.'s Mem. as Ex. 2, Docket Entry No. 25-3; *see also* Pl.'s Mem. 4); (3) invoices dated July 9, 2024, in the amount of $26,152.00; dated January 15, 2025, in the amount of $17,136.00; dated July 15, 2025, in the amount of $39,210.37;[9] and dated September 25, 2025, in the amount of $135,370.54,[10] (Invoices, annexed to Pl.'s Reply as Exs. C1–C4, Docket Entry Nos. 28-2, 28-3, 28-4, 28-5); (4) a record reflecting five payments from Plaintiff to Ryu: $20,015.00 dated December 15, 2025; $20,015.00 dated November 17, 2025; $39,225.37 dated October 1, 2025; $13,679.00 dated March 4, 2025; and $26,152.00 dated August 7, 2024,[11] (Payment Record, annexed to Pl.'s Reply as Ex. C5, Docket Entry No. 28-6); and (5) the Ryu Declaration which states that Ryu's firm "maintains contemporaneous time records for all work performed on this matter," and that he bills his wage-and-hour defense-side clients at $560.00 per hour without discount. (Ryu Decl. ¶¶ 6–9; *see* Ryu Decl. II ¶ 3.)

Defendants argue that Plaintiff's requested attorneys' fees "def[y] logic in this action, where there was [no] motion practice or depositions of the parties conducted," and that "Plaintiff's counsel's hourly rate and hours expended are inflated." (Defs.' Opp'n 2, 5–7.)

---

[9] The January 15, 2025 and July 15, 2025 invoices are written in Korean. Plaintiff does not submit translations. However, the January 15, 2025 invoice shows a total amount billed of $13,664.00, (January 15, 2025 Invoice, annexed to Pl.'s Reply as Ex. C2, Docket Entry No. 28-3), and the July 15, 2025 invoice shows a total amount billed of $39,210.37, (July 15, 2025 Invoice, annexed to Pl.'s Reply as Ex. C3, Docket Entry No. 28-4).

[10] The September 25, 2025 invoice separates charges into professional fees and disbursements, listing $132,870.00 in professional fees and $2,500.54 in disbursements, for a total of $135,370.54. (September 25, 2025 Invoice, annexed to Pl.'s Reply as Ex. C4, Docket Entry No. 28-5).

[11] Ryu contends that the payment records reflect that the client paid $20,000 per month toward his final bill, which exceeded $130,000. (Suppl. Decl. of Michael Hyunkweon Ryu in Supp. of Pl.'s Reply ("Ryu Decl. II") ¶ 3, annexed to Pl.'s Reply, Docket Entry No. 28-1.)

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL §§ 198(1), (1-a); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citations omitted). Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case . . . ." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105–06 (2d Cir. 2022) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008)); *see Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) (summary order) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 358 (2d Cir. 2021) (quoting same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Ortiz*, 843 F. App'x at 359 (quoting *Lilly*, 934 F.3d at 230). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher*, 948 F.3d

at 606–07 ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" (quoting same)).  "Courts look to '[b]oth "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint.'"  *Holick*, 48 F.4th at 109 (quoting *Barfield*, 537 F.3d at 152).  Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *id.* at 190 (clarifying that district courts should consider, among others, the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *see Lilly*, 934 F.3d at 229–30 (explaining the *Arbor Hill* factors).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill*, 522 F.3d at 183; and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–53 (2010)); *see SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*, Nos. 23-7313, 23-7321, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (summary order) (quoting *Millea*, 658 F. 3d at 166); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, Nos. 19-469, 19-738, 19-1558, 2021 WL 5816245,

at *7 (2d Cir. Dec. 8, 2021) (summary order) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)). The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")); *see also Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *6 (E.D.N.Y. Sep. 11, 2024) (holding that a prevailing plaintiff must provide detailed billing records specifying hours worked, rates charged, and related costs before the court can assess reasonableness of requested fees, and directing submission of supplemental documentation).

### A.    Reasonable hourly rate

Plaintiff first argues that Ryu's hourly rate of $560 and paralegal Kim's hourly rate of $220 "are exactly what Plaintiff agreed to in writing." (Pl.'s Mem. 4; *see* Representation Agreement ¶ 8 (although listing paralegal rate as $210 per hour).) Plaintiff further contends that Ryu "charges wage-and-hour defense clients and other non-fee-shifting clients, who pay these rates without discount," thereby reflecting Ryu's "actual, realized market rate." (Pl.'s Mem. 4; Ryu Decl. ¶ 8–9.) Second, Plaintiff argues that Ryu's $560 rate falls within the current range of partner-level rates recognized in the Eastern District of New York, approximately $450 to $650, and cites recent decisions approving rates in this range in light of inflation and current market

12

conditions.  (Pl.'s Reply 2 (first citing *Williams v. Harry's Nurses Registry, Inc.*, No. 23-CV-6661, 2025 WL 2481745, at *11–12 (E.D.N.Y. Aug. 28, 2025); and then citing *Kim v. J&J Safetymate Corp.*, No. 22-CV-1070, 2025 WL 2783273, at *4–5 (E.D.N.Y. Sep. 30, 2025)).)  Third, Plaintiff maintains that the submitted evidence of actual billing and payment further supports the reasonableness of the requested rates.  (Pl.'s Reply 2–4.)  Fourth, in support of Ryu's fee, Plaintiff submitted a declaration from Ryu that states he has been practicing law since 2004, focusing on "litigation, including the representation of mostly plaintiffs in wage-and-hour disputes in federal and state courts in [New York, New Jersey, Washington, D.C., Maryland, and Virgina]" and that he is fluent in Korean, which is "necessary for communicating with [] Plaintiff and managing translated documents and testimony."  (Ryu Decl. ¶¶ 3–4; Pl.'s Mem. 6.)  Fifth, Plaintiff argues that Defendants' reliance on *Hong v. Mommy's Jamaican Market Corp.*, is misplaced because it reflects "a single outdated rate" based on work performed between 2020 and 2023, and it was decided on a different record and in a different forum.  (Pl.'s Reply 4–5 (citing No. 20-CV-9612, 2024 WL 1242507, at *3–4 (S.D.N.Y. Mar. 21, 2024), *reconsideration denied*, 2024 WL 2214309 (S.D.N.Y. May 16, 2024)).)

Defendants argue that there is no case law in support of awarding a $560 hourly rate for Ryu or a $220 rate for paralegal Kim, and cite *Hong*, in which the court awarded Ryu an hourly rate of $425 and Cathy Kim an hourly rate of $100 in a single-plaintiff NYLL case.  (Defs.' Opp'n 6 (citing *Hong*, 2024 WL 1242507, at *3).)

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Lilly*, 934 F.3d at 231 (second and third alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see Agudath*, 2023 WL 2637344, at *2 (quoting same).

Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (summary order) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *Chaparro*, 2021 WL 5121140, at *1–2 (affirming district court decision on reasonableness of hourly rate in accordance with forum rule). The prevailing rates for experienced attorneys in the Eastern District of New York cases range from approximately $100 to $450, depending on experience level. *See Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (noting rates for attorneys in E.D.N.Y. cases ranged from $300–$400 (citing *Konits v. Valley Stream Cent. High Sch. Dist.*, No. 01-CV-6763, 2010 WL

14

2076949, at *2 (E.D.N.Y. May 19, 2010))); *Vazquez Romero v. La Morenita Fruit Mkt. Corp.*, No. 23-CV-6300, 2026 WL 687228, at *15 (E.D.N.Y. Mar. 11, 2026) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." (quoting *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024)); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("Courts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. Cnty. of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))).  Although some courts in this District "have recognized slightly higher ranges . . . of $300–$450 per hour for partners," *Harris v. Best Companion Homecare Servs., Inc.*, No. 18-CV-5328, 2019 WL 4738821, at *8 (E.D.N.Y. Aug. 26, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 4737056 (E.D.N.Y. Sep. 27, 2019), the cases in which the upper limit of this range has been awarded have involved "attorneys with 20 or more years of experience," *Small v. N.Y.C. Transit Auth.*, No. 03-CV-2139, 2014 WL 1236619, at *6–7 (E.D.N.Y. Mar. 25, 2014) (collecting cases).  *See, e.g.*, *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (noting that district courts have "conclud[ed] that approximately $[]300 to $[]450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266, 2025 WL 405986, at *6–7 (E.D.N.Y. Feb. 5, 2025) (applying the forum rule and finding a $450 partner rate reasonable given counsel's experience and prevailing Eastern District market rates); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2023 WL

5758995, at *3 (E.D.N.Y. Sep. 6, 2023) ("[T]here is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (alteration in original) (citing *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sep. 22, 2022))).  In the Eastern District of New York, "senior associates are typically awarded $200 to $325 per hour."  *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); *Shuford*, 2024 WL 865989, at *3.  As for paralegals, courts "have recently awarded hourly rates ranging from . . . $70 to $100 for legal support staff in FLSA cases."  *Park v. Khims Mkt. Inc.*, No. 24-CV-7437, 2025 WL 3461156, at *18 (E.D.N.Y. Aug. 19, 2025) (quoting *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sep. 30, 2022)), *supplemented*, 2025 WL 3460949 (E.D.N.Y. Aug. 27, 2025); *Sanchez Flores v. El Bukanitas Inc.*, No. 22-CV-6751, 2024 WL 1051161, at *14 (E.D.N.Y. Feb. 14, 2024) (same), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 19, 2024); *Ladino v. Cordova*, 21-CV-2449, 2024 WL 968898, at *6 (E.D.N.Y. Feb. 14, 2024) (same), *report and recommendation adopted*, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).

"[T]he fee applicant [has the burden] to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 61 (E.D.N.Y. 2024) (second

16

alteration in original) (quoting *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at \*5 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014)); *see also Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209–211 (2d Cir. 2005) (explaining that district courts must ground their rate determinations in the evidentiary record rather than relying on assumptions based on the proof submitted). When the evidentiary submission does not substantiate the level of experience necessary to support the proposed rates, courts reduce the requested compensation. *See Howarth v. FORM BIB LLC*, No. 18-CV-7047, 2020 WL 3441030, at \*5 (S.D.N.Y. May 11, 2020) ("Where a moving party 'fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.'" (quoting *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362 (S.D.N.Y. 2010))), *report and recommendation adopted*, 2020 WL 3436685 (S.D.N.Y. June 22, 2020); *Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at \*19 (E.D.N.Y. Oct. 1, 2019) ("[W]hen a party fails to provide information to support the hourly rate of an associate, courts may reduce the hourly rate to the lowest associate rate in the range."), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300–02 (E.D.N.Y. 2012) (finding the submitted declaration, which only "provide[d] some background on his experience in civil rights litigation," stated he had worked "on unspecified matters," and detailed experience at two firms which did not "have a practice in civil rights or housing discrimination litigation," did not demonstrate relevant litigation experience or a background consistent with the senior-level rate sought but that "much closer to a junior associate than the senior partner whose hourly rate he hope[d] to claim," and thus reduced the requested rate to that of a junior associate). Courts have

17

also determined that information such as an attorney's admission date or title does not alone establish entitlement to the higher end of senior-level market rates. *See UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 23-CV-1441, 2025 WL 1506163, at *6 n.5 (N.D.N.Y. May 27, 2025) ("Given [the attorney's] 28 years as an attorney, she may be entitled to a greater rate of compensation, but as the record contains no information regarding fields of expertise, reputation, or professional experience, the [c]ourt awards the high end of the associate rate."); *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sep. 15, 2022) ("[I]n the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." (quoting *Lopez v. Ki Moon Rest. Corp.*, No. 17-CV-6078, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021))), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sep. 30, 2022); *Tjartjalis v. Pro. Claims Bureau, Inc.*, No. 14-CV-1412, 2016 WL 4223493, at *2 (E.D.N.Y. Aug. 9, 2016) ("Although [the attorney was] presumably [ ] a partner at the new firm, that title does not, in and of itself, confer him with a higher level of experience warranting a higher hourly rate.").  "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Melo*, 750 F. Supp. 3d at 61–62 (quoting *Brown*, 2014 WL 1237448, at *5); *id.* (finding that although counsel had "been admitted to practice since 1992 and is counsel at the firm," "no other information [was] provided about him," and "[t]he affidavit [did] not provide information as to [the attorney's] experience," the court found "the requested rate excessive" and instead awarded $325 per hour as "appropriate" and "at the high end for senior associates").

With respect to Ryu, the Court finds that the requested rate of $560 per hour exceeds the prevailing rates in this District, and the Court therefore reduces Ryu's attorney's fee rate from

$560 to $450.  First, although Plaintiff submits evidence, including the Representation Agreement, the Billing Summary with detailed entries, and the invoices showing that Ryu charges and receives this rate from paying clients, (Representation Agreement; Billing Summary; Invoices), courts in the Eastern District of New York have generally approved partner-level rates between approximately $300 and $450.  *See Leevson*, 770 F. App'x at 583 (noting that district courts have "conclud[ed] that approximately $300 to $450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin*, 2015 WL 1476415, at *8)).  Cognizant of inflation, some courts in this District have approved partner rates at around $500 for FLSA/NYLL cases while also factoring in the nature of representation and type of work involved in the case.  *See Williams*, 2025 WL 2481745, at *11–12 (awarding $500 and noting that the prior "district norm" was "outstripped by inflation," and acknowledging counsel's extensive experience litigating FLSA cases and skills); *Kim*, 2025 WL 2783273, at *4–5 (awarding $500 in light of counsel's significant experience in wage-and-hour cases, Korean language skills, and the case's lengthy litigation through trial).  Even in those cases, however, the courts declined to award rates at or above $550.  *See Williams*, 2025 WL 2481745, at *11 (granting the requested $500 hourly rate); *Kim*, 2025 WL 2783273, at *5 (reducing requested hourly rate of $550 to $500).

Second, prior fee awards to Ryu also support a downward adjustment.  *See Hong*, 2024 WL 1242507, at *5 (awarding Ryu a rate of $425 per hour in 2024 when Ryu initially requested "$430 per hour in 2020, $480 per hour in 2021, $510 per hour in 2022, and $560 per hour in 2023," based in part on "the relative simplicity of the case . . . which involved only one plaintiff"); *Lee v. Agape Health Mgmt., Inc.*, No. 22-CV-311, 2024 WL 5121027, at *7 (E.D. Va. Dec. 16, 2024) (adjusting prior award in *Cho* for inflation and awarding approximately a rate of

$413 hourly despite Ryu's request of $560 hourly (citing *Cho v. Joong Ang Daily News Washington, Inc.*, No. 18-CV-1062, 2020 WL 1056294, at *4 (E.D. Va. Mar. 4, 2020)); *Cho*, 2020 WL 1056294, at *4 (awarding a rate of $350 hourly based on Ryu's experience and Korean language skills). While these decisions are not controlling, they demonstrate that Ryu's requested rate in this case exceeds the rates that other courts have approved for him in FLSA cases.

Third, the Court recognizes Ryu's twenty years of legal experience generally, previous litigation of wage-and-hour disputes in federal and state courts in New York, New Jersey, Maryland, and Virgina, his role as principal of the Ryu Law Firm, and his Korean language skills. (Ryu Decl. ¶ 1–4.) However, Ryu has not demonstrated that his experience in labor law cases and Korean or Korean-American workplace disputes is comparable to that of attorneys awarded outside of the normal range for this District. *See Hong*, 2024 WL 1242507, at *5 (finding that Ryu did not demonstrate experience comparable to attorneys awarded $450 per hour, who had decades of experience in FLSA litigation, and instead awarding Ryu $425 per hour). The Court acknowledges that Ryu's Korean language skills, which were used to communicate with the Korean-speaking Plaintiff, may have reduced interpretation costs in this case, and awards Ryu an hourly rate of $450, at the upper limit of the partner fee range. *See Kim*, 2025 WL 2783273, at *4 (considering the counsel's Korean fluency in determining a reasonable hourly rate); *Shin v. Party Well Rest. & Oriental Bakery, Inc.*, No. 20-CV-1319, 2023 WL 8701337, at *5 (E.D.N.Y. Dec. 15, 2023) (same), *report and recommendation adopted*, 2024 WL 1327420 (E.D.N.Y. Mar. 28, 2024), *aff'd*, No. 24-1189, 2025 WL 783737 (2d Cir. Mar. 12, 2025) (summary order); *see also Cho*, 2020 WL 1056294, at *4 (crediting Ryu's Korean fluency

20

in calculating attorney's fees, where the plaintiff spoke Korean and relevant documents were in Korean).

Fourth, this case was relatively straightforward, without any discovery or motion practice, and accordingly, this lack of difficulty supports an award of $450 within the normal fee range for this District. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015) (finding the matter "relatively straightforward as compared to a contested trial" and reducing attorneys' fees); *Dajbabic v. Rick's Cafe*, 995 F. Supp. 2d 210, 213–15 (E.D.N.Y. 2014) (reducing attorneys' fees because the "FLSA and NYLL claims were prosecuted on behalf of a sole plaintiff who worked only a few shifts at the defendants' restaurant" and presented limited legal and factual issues); *cf. Hong*, 2024 WL 1242507, at *5 (finding that "Defendants' dilatory and obstructive tactics made the litigation both more complex and more protracted than common in a single-plaintiff NYLL case" and awarding a higher attorneys' fee rate than a typical single-plaintiff NYLL case). The Court therefore reduces Ryu's attorney's fee rate from $560 to $450. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 466 (S.D.N.Y. 2022) ("'[I]t is within the [c]ourt's discretion to reduce the requested rate' when the [c]ourt finds the rate unreasonable in the relevant market." (quoting *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05-CV-5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008))).

The Court also finds paralegal Kim's requested hourly rate of $220 to be above the District norm, which is typically between $70 to $100 for legal support staff, and awards her an hourly rate of $100. *See Sanchez Flores*, 2024 WL 1051161, at *14 (concluding that $70 to

$100 is "the typical range of awarded hourly rates for legal support staff" in the District). Plaintiff has not submitted any information supporting an above-market rate; he has not submitted any information about Cathy Kim's experience in general, and the Court therefore reduces Cathy Kim's rate to $100 per hour. *See Vazquez Romero*, 2026 WL 687228, at *15 (awarding $80 hourly rate for paralegal work despite a request for $125 because the paralegal "performed routine paralegal tasks . . . and there is no additional information about [their] skills or experience to justify more than a garden-variety hourly rate"); *Williams*, 2025 WL 2481745, at *12 (rejecting the application of inflation-based increases to paralegal work and reducing the requested $150 hourly rate to $100); *Camillo v. Khim's Millenium Mkt., Inc.*, No. 22-CV-7846, 2025 WL 951265, at *16–17 (E.D.N.Y. Mar. 13, 2025) (reducing paralegal hour rate to $100 where "[n]o credentials or background information" were provided for the paralegals), *report and recommendation adopted*, 2025 WL 948125 (Mar. 28, 2025); *Hunter v. City of New York*, No. 12-CV-6139, 2021 WL 4942769, at *5 (E.D.N.Y. Oct. 22, 2021) (finding $100 hourly rate for paralegals to be reasonable); *Lopez v. PMMT Inc.*, No. 14-CV-2057, 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016) (reducing paralegal hourly rate to $100), *report and recommendation adopted*, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017). Prior awards to Cathy Kim similarly support a lower rate. *See Hong*, 2024 WL 1242507, at *6 (awarding Cathy Kim an hourly rate of $100); *Lee*, 2024 WL 5121027, at *7 (awarding Cathy Kim an hourly rate of $94.40 after an inflation adjustment). In light of prevailing rates in this District and prior awards to Cathy Kim, the Court finds a rate of $100 per hour reasonable. *See Architectural Metal Concept LLC*, 636 F. Supp. 3d at 466 (recognizing the court's discretion to reduce unreasonable rates in the relevant market).

22

## B.    Hours reasonably expended

Plaintiff submits records reflecting approximately 138.00 total hours of attorney and paralegal time, of which 116.10 hours are attributable to Ryu and 21.90 hours to paralegal Kim. (Pl.'s Mem. 4; Billing Summary 1.)  These hours encompass client intake and communications, investigation and analysis of claims, drafting and revising the complaint and related filings, service and pretrial coordination, discovery and subpoena practice, deposition preparation and attendance, and preparation for and participation in arbitration proceedings.  (Pl.'s Mem. 4; *see also* Pl.'s Reply 5.)

Plaintiff argues that the total of 138 hours expended is reasonable, "given the contested arbitration," and because "the work required was substantive and case-specific."  (Pl.'s Mem. 4; Pl.'s Reply 5.)  First, Plaintiff contends that the lack of motion practice "does not demonstrate overbilling," but instead reflects "a focused litigation strategy."  (Pl.'s Reply 5.)  Second, Plaintiff maintains that the work performed at the complaint stage was not routine, explaining that "where pay records are incomplete and payments irregular, counsel must reconstruct workweeks, rates, pay methods, and damages with care."  (*Id.* at 5–6.)  Third, Plaintiff rejects Defendants' line-by-line challenges to billing entries, asserting that where "entries are contemporaneous and tied to necessary litigation tasks," the overall number of hours should be deemed reasonable.  (*Id.* at 6.)  Finally, Plaintiff argues that Defendants' proportionality argument is foreclosed by fee-shifting principles, and that the dismissal of Defendants Sung Hee Son and Yi does not warrant any reduction because the related work "was intertwined with the core merits and damages proof."  (*Id.* at 7.)

Defendants argue that the hours requested are unreasonable.  (Defs.' Opp'n 2–7.)  First, Defendants contend that Ryu's hours overall are excessive because the case involved minimal

23

litigation activity, noting that "[t]here was no motion practice, no party depositions, or any discovery requests propounded by the Defendants," that Defendants Sung Hee Son and Yi were "dismissed from the action on the merits," and that the remaining Defendants "admitted liability prior to the arbitration." (*Id.* at 7.)  Second, Defendants challenge Plaintiff's billing at each stage of the litigation, identifying several relatively "straight forward" tasks for which Ryu billed excessive hours. (*Id.* at 2–4.)  For example, Defendants assert that Ryu billed approximately 27.5 hours from the inception of the representation through the filing of the Complaint, including "1 hour researching 'forum' when Plaintiff and all Defendants resided in Queens County and Plaintiff worked for Defendants in Queens County," and 10.20 hours drafting the summons, civil cover sheet, and what Defendant characterizes as a "fairly straightforward Complaint." (*Id.* at 2–3.)  Defendants further argue that, despite the absence of party depositions and written discovery demands, and the fact that Plaintiff conducted only a non-party deposition of an accountant, Plaintiff billed approximately 39.30 hours during the discovery period. (*Id*. at 4.)  Defendants also note that Plaintiff served requests for admissions and Defendants admitted key elements of liability, including that they were Plaintiff's employers under the FLSA and NYLL and that FLSA coverage applied. (*Id*.)  Third, Defendants compare this "straightforward" case to *Hong*, which involved the same counsel, "a highly contested action that started on November 16, 2020 and which the trial concluded on December 13, 2023," sanctions against defense counsel, and an award of $177,318,25 in attorneys' fees to Ryu. (Defs.' Opp'n 6 (citing *Hong*, 2024 WL 1242507, at *3).)  Defendants argue that, in light of that high award, Plaintiff cannot rely on *Hong* to justify the fees sought in this case.[12]  Similarly, Defendants assert that the cases cited by

---

[12] Both Plaintiff and Defendants' briefs, in comparing cases, focus on the total fee awarded rather than the underlying hours expended. (Pl.'s Mem. 6–7; Defs.' Opp'n 6–7.)  Courts

24

Plaintiff involved significantly more complex procedural histories.  (*Id.* at 7.)  Fourth, Defendant argues that the requested fee is excessive because it amounts to approximately 78.5 percent of the Award obtained.  (*Id.*)

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sep. 9, 2024) ("In determining whether the number of hours worked is reasonable, a district court should examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." (alteration in original) (internal quotation marks omitted) (quoting *Chaparro*, 2021 WL 5121140, at *2)); *see Agudath*, 2023 WL 2637344, at *2 ("When reviewing a fee application, a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation.'" (alteration in original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))).  To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done.  *See Raja v. Burns*, 43 F.4th 80,

---

often apply across-the-board percentage reductions to account for issues in both the hours claimed and the rates requested, without separately specifying the adjusted hours.  *See, e.g.*, *Hong v. Mommy's Jam. Mkt. Corp.*, No. 20-CV-9612 , 2024 WL 1242507, at *8 (S.D.N.Y. Mar. 21, 2024) ("Taking into account the excess hours billed by [the p]laintiff and the unreasonable rates used by [the p]laintiff in his calculation of the attorney's fees owed, the [c]ourt will award 50% of the attorney's fees requested — from $354,636.50 to $177,318.25."), *reconsideration denied*, 2024 WL 2214309 (S.D.N.Y. May 16, 2024); *Shin v. Party Well Rest. & Oriental Bakery Inc.*, No. 20-CV-1319, 2024 WL 1327420, at *6 (E.D.N.Y. Mar. 28, 2024) (applying a 25% reduction of the total fee in light of duplicative billing, excessive micro-billing, and improper billing for certain tasks and unreasonable rates for partner and paralegal), *aff'd*, No. 24-1189, 2025 WL 783737 (2d Cir. Mar. 12, 2025) (summary order).

86–87 (2d Cir. 2022) (explaining that the party seeking attorneys' fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (citation and internal quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records . . . ."); *Morales v. Fine Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016); and then quoting *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020))), *report and recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024).  Block billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)); *see Abularach*, 2025 WL 405986, at *8–9 (recognizing that while block billing is permissible if the court can meaningfully review the hours, courts may reduce total time when billing includes excessive or administrative work). However, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Raja*, 43 F.4th at 87 (quoting *Restivo*, 846 F.3d at 591).  "In determining

26

the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023). "[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Raja*, 43 F.4th at 87).

The Court finds that the hours billed by Ryu and Cathy Kim are excessive in light of the limited complexity of this single-plaintiff wage-and-hour case, the presence of numerous small and repetitive time entries, duplicative billing for substantially similar tasks, and the inclusion of time spent on administrative or clerical work.

First, Ryu's requested 116.10 hours in this case exceed the typical amount of hours for a single-plaintiff wage-and-hour case with minimal legal issues. (Pl.'s Mem. 4; Billing Summary 1.) *See Melo*, 750 F. Supp. 3d at 62 (finding 27.48 hours reasonable in a single-plaintiff wage-and-hour case that, although ultimately resolved on default, involved approximately 1.5 years of litigation and pre-default mediation); *Dajbabic*, 995 F. Supp. 2d at 215 (reducing a request of approximately 125 hours by half, reasoning that the case involved a single plaintiff who worked only a few shifts and presented limited legal and factual issues); *cf. Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 176 (S.D.N.Y. 2018) (approving approximately 112 total hours across four attorneys — 7.05 hours for a partner and 34.9, 46.45, and 24 hours for associates — in a three-plaintiff FLSA/NYLL action); *Silva v. Legend Upper W. LLC*, 590 F. Supp. 3d 657, 666 (S.D.N.Y. 2022) (approving 126.35 total hours worked by attorneys and paralegals in a wage-and-hour action that proceeded through a bench trial involving multiple plaintiffs).

27

While both parties rely on *Hong v. Mommy's Jamaican Market Corp.*, a single-plaintiff NYLL action involving Ryu, (Pl.'s Mem. 7, 11; Defs.' Opp'n 6), the Court finds that *Hong* does not provide a meaningful comparison to this case with respect to the amount of reasonable hours because it was materially more complex due to the defendants' litigation conduct. *See Hong*, 2024 WL 1242507, at *8. In *Hong*, the court observed that the defendants "did much to multiply costs in this case, by resisting discovery at every turn and by forcing [the p]laintiff to call translators and engage in other expenses," and ultimately the court sanctioned the defendants' conduct as vexatious and dilatory. *Id.* at *7–8; *see also Hong v. Mommy's Jam. Mkt. Corp.*, No. 20-CV-9612, 2024 WL 3824394, at *1 (S.D.N.Y. Aug. 14, 2024) (ordering sanctions against the defendants), *aff'd sub nom.*, *Lee v. Hong*, No. 24-2435, 2025 WL 3637495 (2d Cir. Dec. 16, 2025) (summary order). No comparable circumstances are present in this case, and Plaintiff does not allege that Defendants engaged in conduct that materially increased the cost or complexity of the litigation. Rather, Plaintiff identifies routine challenges common in wage-and-hour cases such as reconstructing hours and pay practices from incomplete records, identifying multiple defendants, complying with statutory pleading requirements, conducting limited discovery, and preparing for an arbitration hearing. (Pl.'s Reply 5.) Moreover, even in *Hong*, a more contentious and procedurally burdensome case, Ryu sought 711.3 hours and the court imposed a 50% across-the-board reduction after finding the amount of hours billed excessive. *Hong*, 2024 WL 1242507, at *8; Billing Statement, annexed to Pl.'s Mot. as Ex. 6, Docket Entry No. 194-6, *Hong v. Mommy's Jam. Mkt. Corp.*, No. 20-CV-9612, 2024 WL 1242507, at *8 (S.D.N.Y. Mar. 21, 2024), *reconsideration denied*, 2024 WL 2214309 (S.D.N.Y. May 16, 2024). *Hong* therefore underscores the conclusion that the hours requested in this case are unreasonable.

Accordingly, the Court declines to treat hours approved or requested in the procedurally more complex cases cited by Plaintiff as a benchmark for the present action.  *See, e.g.*, *Shin*, 2024 WL 1327420, at *1, 6 (finding 594.5 hours excessive and applying a 25% across-the-board reduction in total fees in a single-plaintiff FLSA/NYLL action involving two rounds of mediation, two settlement conferences, a denied motion for summary judgment, and a three-day trial); *Paguay v. Cantini*, No. 11-CV-6266, 2014 WL 12775308, at *6–8 (S.D.N.Y. Aug. 1, 2014) (approving approximately 535 hours in a highly contested single-plaintiff FLSA/NYLL action involving extensive discovery, multiple depositions, summary judgment, and trial over more than three years).[13]

Second, the Court also finds that a portion of the hours expended reflects excessive billing resulting from numerous small, repetitive entries.  For example, between June 18 and 24, 2025, Ryu billed over 6.0 hours on emails, correspondence with opposing counsel, and scheduling-related matters in connection with discovery and arbitration.  (*See, e.g.*, Billing Summary 6–8, entries from June 18, 2025 (0.4 hours preparing for arbitration and contacting the arbitrator); June 19, 2025 (0.4 hours reviewing and responding to opposing counsel regarding discovery scheduling and disputes; 0.1 hours responding to arbitrator's inquiry; 0.1 hours responding to arbitrator's request); June 20, 2025 (0.1 hours reviewing correspondence from opposing counsel; 0.5 hours responding to opposing counsel's request to reschedule a deposition; 0.2 hours attempting to contact non-party witness; 0.5 hours conferencing with opposing counsel

---

[13]  The court in *Paguay v. Cantini*, No. 11-CV-6266, 2014 WL 12775308, at *6–8 (S.D.N.Y. Aug. 1, 2014), does not specify the total hours expended, but instead approves the reasonableness of the requested fees.  The "approximately 535 hours" figure is drawn from the parties' fee submissions in *Paguay*.  *See* Counsel's Bills 17, annexed to Decl. of Charles R. Virginia as Ex. A, Docket Entry No. 118-1, *Paguay v. Cantini*, No. 11-CV-6266, 2014 WL 12775308, at *1 (S.D.N.Y. Aug. 1, 2014).

regarding a discovery dispute); June 24, 2025 (0.1 hours reviewing and responding to opposing counsel's communications; 0.5 hours reviewing and responding to non-party witness emails; 0.1 hours reviewing and responding to opposing counsel follow-up communications).)  Moreover, the record contains numerous entries in the range of 0.1 to 0.3 hours for reviewing emails, responding to communications, and internal coordination tasks throughout the litigation, which, in the aggregate, substantially increase the total hours billed.  (*Id.*)  While such entries are not improper in isolation, courts have recognized that the cumulative effect of repeated minimum-increment billing may inflate the total hours expended, particularly where many of the communications relate to routine or administrative matters.  *See Shin*, 2024 WL 1327420, at *5 (noting that numerous small, repetitive billing entries contributed to excessive hours and warranted a reduction); *Jones*, 2023 WL 6214213, at *13 (finding hours excessive in part due to repeated 0.1-hour billings for email and ECF review); *see also Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 637 (S.D.N.Y. 2012) (observing that multiple 0.1-hour entries for reviewing emails may result in inflated billing).

Third, the Court finds that the billing records reflect duplicative entries for substantially similar tasks.  For example, on March 5, 2025, Ryu billed 0.7 hours to "review complaint, summons, cover sheet; revise them; prepare [New York Business Corporation Law Section] 630 notice and 624(b) demand; [and] instruct[] paralegal as to filing and service thereof," followed by an additional 0.6 hours for a "second review of the complaint, summons, [and] cover sheet" with further instructions for revision, and another 0.4 hours for "final review of the filing package," including signing and instructing the paralegal to file.  (Billing Summary 3 (entries dated Mar. 5, 2025).)  That same day, paralegal Kim billed 1.2 hours to "finalize and efile complaint and summons."  (*Id.*)  These entries reflect multiple layers of review and revision of

30

the same core filings within a single day, suggesting duplication of effort.  *See Shin*, 2024 WL 1327420, at *5 (finding multiple entries reflecting repeated review and analysis of the same subject matter duplicative and contributing to excessive hours).

Fourth, a portion of the time billed relates to administrative or clerical tasks, including service-related logistics, mailing, document organization, and routine status tracking, which do not warrant compensation at attorney or paralegal rates.  For example, Ryu and paralegal Kim billed time for arranging service of process, preparing mailing packets, traveling to USPS and FedEx locations, and confirming delivery, as well as filing affidavits of service and reporting service status.  (*See* Billing Summary 3–4 (entries dated Mar. 5–12, 2025, and Mar. 26–27, 2025).)  Courts in this Circuit have consistently held that such tasks are administrative in nature and are not compensable or are compensable only at a reduced rate.  *See Barfield*, 537 F.3d at 139 (affirming district court's determination that time "spent on administrative tasks should not be compensated at all"); *Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221, at *9 (E.D.N.Y. Sep. 25, 2013) (declining to award fees for time spent on "communicating with the process server, filing documents with the court, scheduling depositions, and other related [administrative] tasks"); *see also Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787, 2020 WL 7647178, at *5 (S.D.N.Y. Dec. 23, 2020) (reducing plaintiff's hours for vague billing records and to adjust for non-compensable tasks because "a court may exclude time spent by attorneys on 'less skilled work, like filing and other administrative tasks'" (quoting *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011), *aff'd*, 487 F. App'x 619 (2d Cir. 2012))); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ("Even paralegal work . . . is not compensable if it is purely clerical."); *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001) (collecting cases and noting that "[c]ourts of this

31

Circuit have recognized that clerical and secretarial services are part of overhead and are not generally charged to clients"); *Bridges v. Eastman Kodak Co.*, No. 91-CV-7985, 1996 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996) (holding that filing, delivery, and service tasks are part of firm overhead and not compensable), *aff'd*, 102 F.3d 56 (2d Cir. 1996).

The Court also finds unpersuasive Defendants' argument that the dismissal of individual Defendants Sung Hee Son and Yi warrants a reduction of fees. Since Plaintiff's claims against all Defendants arise from a single employment relationship and a unified set of wage practices, and rely on overlapping facts and legal theories, the attorney work performed is inseparable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983) (instructing courts to consider whether claims are based on "different facts and legal theories" or instead "involve a common core of facts or [are] based on related legal theories"); *Raja*, 43 F.4th at 87–88 (holding that where claims share a common core of facts and are not severable, a court "need not determine how much time counsel devoted to each overlapping claim," and should instead focus on the overall relief obtained); *Holick*, 48 F.4th at 109 (affirming limited reduction of fees where successful and unsuccessful FLSA claims were intertwined and observing that "most civil rights claims will involve a common core of facts, or be grounded in related legal theories, or both").

In balancing these considerations, including the limited complexity of the case, together with the small, repetitive entries, duplicative entries and billing for clerical work, the Court reduces the hours billed by 25 percent,[14] from 138 total hours to 103.50 hours, 116.10 hours for

---

[14]  Courts in this Circuit employ different methodologies in applying across-the-board reductions. Some reduce the total fee award by a percentage to account for both unreasonable hours and rates. *See, e.g.*, *Shin*, 2024 WL 1327420, at *6 (applying a 25% reduction of the total fee in light of duplicative billing, excessive micro-billing, and improper billing for certain tasks and unreasonable rates for partner and paralegal); *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213, at *8, 13 (E.D.N.Y. Sep. 25, 2023) (applying a 18% reduction of the total fee

Ryu to 87.10 hours, and 21.90 hours for paralegal Kim to 16.40 hours. *See Abularach*, 2025 WL 405986, at *9 (applying 10% across-the-board reduction in hours because of block-billing and non-compensable administrative tasks); *Shin*, 2024 WL 1327420, at *6 (applying a 25% reduction of the total fee in light of duplicative billing, excessive micro-billing, and improper billing for certain tasks and unreasonable rates for partner and paralegal); *Jones*, 2023 WL 6214213, at *8, 13 (applying a 18% reduction of the total fee in light of repeated small entries, straightforward nature of the case, the excessive hours in comparison to other cases of similar nature, and slightly excessive rates for associates); *see also H.C.*, 71 F.4th at 126 ("[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" (quoting *Raja*, 43 F.4th at 87)); *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *11–13 (E.D.N.Y. Sep. 21, 2015) (applying 10% across-the-board reduction in hours to account for excessive/duplicative and/or vague time charges and block-billing).

### C.   Lodestar calculation

The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at 183–84). The Court calculates the lodestar for each timekeeper by multiplying the number of

---

in light of repeated small entries, straightforward nature of the case, excessive hours in comparison to other cases of similar nature, and slightly excessive rates for associates). Others first adjust the hourly rates and then reduce the hours expended. *See, e.g., Abularach v. High Wing Aviation LLC*, No. 22-CV-1266, 2025 WL 405986, at *9 (E.D.N.Y. Feb. 5, 2025) (applying 10% across-the-board reduction in hours because of block-billing and non-compensable administrative tasks); *Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-CV-5625, 2022 WL 17718551, at *8 (E.D.N.Y. Dec. 15, 2022) (applying 10% across-the-board reduction in hours to account for excessive/duplicative and/or vague time charges and block-billing); *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *11–13 (E.D.N.Y. Sep. 21, 2015) (same). The Court adopts the latter approach in this case.

hours reasonably expended by the applicable reasonable hourly rate. Accordingly, consistent with the analysis above, the Court calculates the lodestar to be $40,835.00. Specifically, Ryu's 116.1 hours are reduced to 87.1 hours, billed at $450 per hour, and Cathy Kim's 21.9 hours are reduced to 16.4 hours, billed at $100 per hour [(87.1 x $450) + (16.4 x $100) = $40,835.00].[15] Thus, Defendants owe Plaintiff $40,835.00 in attorneys' fees.

### 3. Costs

Plaintiff's counsel represents that he incurred $10,172.05 in litigation costs, including expenses for filing fees, service of process, interpreter services, arbitration transcripts, postage, and delivery. (Pl.'s Mem. 3; Ryu Decl. ¶¶ 11–12; Billing Summary 12.) Plaintiff's counsel also states that he received a payment of $3,216.80 from Defendants' counsel as reimbursement for shared costs, which has been credited against the total, resulting in a net request of $6,955.25. (Pl.'s Mem. 3; Ryu Decl. ¶ 14.)

Defendants do not contest the costs requested by Plaintiff. (Defs.' Opp'n 2.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818

---

[15] In his memorandum, Plaintiff argues that the "[a]pplication of the *Arbor Hill / Johnson* factors confirms the lodestar is reasonable" and then emphasizes the time and labor required (including non-English witnesses and arbitration), counsel's specialized skill and Korean-language ability, the contingency risk, the favorable result obtained, counsel's experience, the relative undesirability of the case, and fee awards in purportedly comparable cases. (Pl.'s Mem. 5–7 (first citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); and then citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974))). Because Plaintiff's arguments concern the reasonableness of the hourly rates and hours expended instead of the method of calculating the lodestar, the Court addresses Plaintiff's arguments *supra* in Sections II.b.2.A–B.

F.2d 278, 283 (2d Cir. 1987)).  As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Id*. (citations omitted).

The Court independently reviewed the submitted exhibits and finds that the costs are supported by documentary evidence, including $405.00 in filing fees, (Court Filing Fee, annexed to Pl.'s Mem. as Ex. 4, Docket Entry No. 25-5); $2,032.15 in service of process charges (Process Server Invoices, annexed to Pl.'s Mem. as Exs. 5–6, Docket Entry Nos. 25-6, 25-7); $900.00 for interpreter services, (Interpreter Invoice, annexed to Pl.'s Mem. as Ex. 7, Docket Entry No. 25-8); $6,662.10 in Veritext transcript and related arbitration costs, (Veritext Invoices, annexed to Pl.'s Mem. as Exs. 8, 11, Docket Entry Nos. 25-9, 25-12); as well as approximately $50.40 in postage, (USPS Postage Receipt, annexed to Pl.'s Mem. as Ex. 9, Docket Entry No. 25-10). Although the FedEx postage labels submitted by Plaintiff do not reflect the precise cost of each shipment, they do identify the service type (e.g., priority overnight) and correspond to the itemized postage charges listed in the Billing Summary for approximately $122.40 in total. (FedEx Postage Labels, annexed to Pl.'s Mem. as Ex. 10, Docket Entry No. 25-11; Billing Summary 12.)  In light of this supporting context, the Court finds that these costs are sufficiently documented to permit recovery. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Site Fencing, Inc.*, No. 23-CV-2680, 2024 WL 1082700, at *10 (E.D.N.Y. Mar. 11, 2024) (awarding postage costs despite the absence of receipts where contemporaneous billing records reflected that the requested postage charges corresponded to dates on which counsel served documents), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 29, 2024); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co.*, No. 22-CV-5053, 2023 WL 6318618, at *6 (E.D.N.Y. Sep. 12, 2023) (awarding postage costs without receipts because the date of the

35

requested postage costs matched the dates counsel billed for serving documents), *report and recommendation adopted*, 2023 WL 6308085 (E.D.N.Y. Sep. 28, 2023).  Because Plaintiff's request for costs covers only "reasonable out-of-pocket expenses . . . which are normally charged fee-paying clients," are of the type of expenses typically incurred by an attorney, and are supported by adequate documentation, the Court grants Plaintiff's request for costs in the amount of $6,955.25.  *See Fisher*, 948 F.3d at 600 (quoting *Reichman*, 818 F.2d at 283).

## III.   Conclusion

For the foregoing reasons, the Court finds that the Clerk of Court has already confirmed the arbitration Award judgment amount of $87.799.00.  Pursuant to the arbitration Award, the Clerk of Court shall dismiss the claims against Defendants Sung Hee Son and Yi.  The Court awards prejudgment interest without objection by Defendants in the amount of $11,452.36, grants Plaintiff's motion for attorneys' fees at a reduced amount of $40,835.00, and $6,955.25 in costs without objections.  The Court also awards post-judgment interest at the rate set forth in 28 U.S.C. § 1961, calculated from the date of the entry of judgment, November 12, 2025.  If any amount of the judgment remains unpaid within ninety days after judgment or after the time to appeal has expired if no appeal is pending, Plaintiff's judgment amount will be increased by fifteen percent in accordance with NYLL § 198(4).  The Clerk of Court is directed to enter judgment accordingly.

Dated:  May 26, 2026
      Brooklyn, New York

                                                                        SO ORDERED:


                                                                        _____s/ MKB_____
                                                                        MARGO K. BRODIE
                                                                        United States District Judge

36